UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTELA LOVE,<br><br>                Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                Defendant. | Case No.: 1:14-cv-1802-BAM<br><br>**ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND** |

**INTRODUCTION**

Plaintiff Estela Love ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 6, 9.) The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe. Having carefully considered the parties' briefs, as well as the entire record in this case, the Court finds that the Administrative Law Judge ("ALJ") erred in evaluating Plaintiff's credibility. Accordingly, the ALJ's decision is REVERSED and the case REMANDED for further proceedings consistent with this Order.

///

**FACTS AND PRIOR PROCEEDINGS**

On July 9, 2011, Plaintiff filed her disability application. AR 10.[1] Plaintiff's application was denied initially and on reconsideration. AR 10. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Whitfield Haigler, Jr. held a video hearing on April 16, 2013, from St. Louis, Missouri and issued an order denying benefits on April 26, 2013. AR 10-18. On September 15, 2014, the Appeals Council denied review. AR 1. This appeal followed.

**Relevant Medical Background**

Plaintiff suffers from bilateral knee pain, obesity, hypertension and depression. AR 12. Plaintiff alleges that her pain and depressive symptoms cause functional limitations that prevent her from being able to perform substantial gainful activity. (Doc. 17 at 8).

Plaintiff has sought treatment for various impairments including depression and bilateral knee pain from Ajit Singh Khaira, M.D. *See generally* AR 295-314, 343-354 and 874-902. An x-ray of the left knee revealed moderate degenerative changes of the medial joint compartment. AR 333. An MRI of her left knee revealed degenerative tearing of the medial meniscus and patellar chondromalacia (deterioration of cartilage). AR 335. An MRI of the right knee revealed extensively torn lateral meniscus, chondromalacia of the patella, joint effusion (swelling) and osteochondral defect of the femoral trochlea (portion of the femur that articulates with the patella). AR 336.

Plaintiff also suffers from mental health impairments. On January 2, 2010, Plaintiff was placed on an involuntary, psychiatric hold for two days. AR 281-283. She was diagnosed as suffering from a major depressive disorder. AR 282-283. A consultative internist examined Plaintiff on September 1, 2011. AR 316-321. The examiner opined that Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently; stand/walk for four to six hours per workday; sit for up to six hours per workday; and frequently crouch, kneel, climb and balance. AR 320-321. A consultative psychiatrist examined Plaintiff on September 17, 2011. AR 323-325. The examiner diagnosed Plaintiff as suffering from a depressive disorder, not otherwise specified. AR 325. The examiner opined that

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1 Plaintiff could perform simple job instructions, but is unable to carry out an extensive variety of
2 technical and/or complex instructions. AR 325.

**Hearing Testimony**

4 On April 16, 2013, Plaintiff appeared and testified before the ALJ. AR 24-48. At the hearing,
5 Plaintiff, represented by Gina Fazio, testified that she has only completed the second grade and has
6 limited reading skills. Plaintiff testified that, prior to becoming disabled, she worked as a janitor. AR
7 33- 34.

8 She testified that she has pain in her knees for which medications provide minimal and
9 temporary relief. AR 34. The pain is exacerbated by standing and walking activities. AR 34-35. She
10 estimated that she could stand approximately 20 to 30 minutes before needing to sit, and walk
11 approximately about 10 to 15 steps before needing to sit or take a break. AR 35. She elevates her legs
12 because of swelling. AR 37. She could sit between 20 and 30 minutes because of knee and back pain.
13 AR 36. Plaintiff also testified that she has pain in her hands and right shoulder. AR 37. She has
14 difficulty using her hands even when holding, for example, a can of soda. AR 38. She estimated that
15 she could lift approximately 10 pounds. AR 39.

16 Plaintiff also testified that she experiences significant depression. AR 39. Her problems are
17 compounded by her physical limitations. AR 39. She has problems with memory. AR 39. With respect
18 to activities of daily living, Plaintiff's daughters come several times per week to assist her with various
19 chores and duties. AR 41. Although Plaintiff takes medications, she also experiences significant side-
20 effects. AR 43.

21 The ALJ also heard testimony from vocational expert ("VE") Tallson. AR 47. The ALJ posed
22 a hypothetical question to VE Tallson that contemplates an individual with marked limitation in
23 maintaining attention and concentration for extended periods, and responding appropriately to work
24 pressures and adapting to changes in the work environment. AR 47. The net effect is that the
25 individual would be off task approximately 12% of the time. AR 47. The vocational expert testified
26 that such an individual would not be able to perform any work. AR 47.

27 The ALJ posed an additional hypothetical question to the VE concerning a set of limitations
28 including being limited to light work with only occasional climbing, crouching, and moving, and

crawling, frequently balancing or stooping, but having marked limitations in understanding, remembering, and carrying out detailed instructions. The VE testified that a person with those limitations would be able to perform Plaintiff's past work as a maid as defined in the Dictionary of Occupational Titles ("DOT") code 323.687-014.  AR 45-46.  Adding additional limitations of no crawling and being markedly limited in understanding, remembering, and carrying out complex and detailed instructions, the VE testified that a person so limited would still be able to perform Plaintiff's past work as a maid. AR 47.

## THE ALJ'S DECISION

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 10-18.  More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since December 31, 2010.  AR 10.  The ALJ identified obesity, hypertension, bilateral knee osteoarthritis, diabetes mellitus and depression as severe impairments. AR 12.  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 13.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work, including occasionally climbing ladders, ropes, scaffolds, ramps and stairs, performing frequent balancing and stooping, doing occasional crouching and kneeling but no crawling, and that she had marked limitations in understanding, remembering and carrying out detailed and complex instructions.  AR 13-17. Based on the testimony of the VE, the ALJ found that Plaintiff was able to perform her past relevant work as a maid.  AR 17.  The ALJ therefore concluded that Plaintiff was not disabled under the meaning of the Social Security Act.  AR 18.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## DISABILITY STANDARD

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION

In one argument, Plaintiff challenges the ALJ's reasons for rejecting her subjective symptom testimony.

### A.   The ALJ's Credibility Determination is Flawed

Plaintiff's sole argument is that the ALJ failed to provide clear and convincing reasons for discrediting her subjective symptom testimony. (Doc. 17 at 9). According to Plaintiff, the ALJ rejected her subjective symptom testimony for the sole reason that it was not supported by the objective evidence, which is not, by itself, a legally sufficient basis for rejecting such testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir. 1991) (noting that "[i]f an adjudicator could reject a

claim of disability simple because [plaintiff] fails to produce evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings"). In response, the Commissioner asserts that the ALJ adequately articulated appropriate reasons for discrediting Plaintiff. (Doc. 20 at 4). A review of the record reveals the ALJ committed error because he failed to give clear and convincing reasons, as required, for finding Plaintiff lacked credibility.

At the hearing and in her application for benefits, Plaintiff testified that she experiences pain in both knees, both approximately at the same severity. AR 34. While she takes medications, it only provides minimal and temporary relief. AR 34. The pain is exacerbated by standing and walking activities. AR 34-35. She estimated that she could stand approximately 20 to 30 minutes before needing to sit. AR 35. Plaintiff can walk about 10 to 15 steps before needing to sit or take a break and she frequently needs to elevates her legs because of swelling. AR 35, 37. Plaintiff could only sit between 20 and 30 minutes because of knee and back pain. AR 36. Plaintiff also testified that she has pain in her hands and right shoulder and she has difficulty holding objects. AR 37-38. She estimated that she could lift approximately 10 pounds. AR 39.

Plaintiff argues that the ALJ failed to properly evaluate her credibility and assess her subjective complaints when he rejected her subjective symptom testimony solely because it lacked consistency with the objective findings. The Court agrees.

Here, the ALJ rejected Plaintiff's testimony by stating the following:

> The claimant alleges disability due to a combination of impairments. The claimant testified she is always depressed and crying; has no energy and cannot sleep. The claimant also testifies she has pain all of the time in both of her knees, which get swollen and go numb. The claimant further stated she can sit or stand for probably twenty to thirty minutes and has a hard time crawling and getting on her knees because they are swollen all of the time. The claimant additionally testified to having pain in her hand and shoulders; and stated her hands are weak and that she cannot hold much. However, the claimant's allegation of disability is not fully credible.
>
> The objective medical evidence does not support limitations greater than in the residual functional capacity. Regarding the claimant's physical complaints, the physical consultative examiner Rustom Damania, M.D., diagnosed the claimant with osteoarthritis of both knees, obesity, hypertension and diabetes mellitus. X-rays of the claimant's left knee showed interval development of moderate degenerative changes of the medial joint compartment with a diagnosis of a lateral meniscus tear. An MRI of the right knee showed a torn lateral meniscus, chondromalacia patella, joint effusion and osteochondral defect involving the femoral trochlea. However, a recent treatment note indicated that she ambulated to an examination room without assistance; and was able to sit comfortably on the examination table without difficulty or evidence of pain. The claimants other impairments are all treated with medication. Regarding the

claimant's depression, she received treatment from Sequoia Community Health Centers for major depression. However, the mental status examination indicated the claimant was oriented to person, place, time, and situation, had a euthymic mood, had intact memory, had a thought content that was within normal limits, and had good concentration, judgment and insight; and with a Global Assessment of Functioning (GAF) score of 65. The GAF score is a clinical rating of an individual's overall psychological, social, occupational functioning, on a scale of 0 to 100. A rating of 65 indicates mild symptoms in one area or difficulty in one of the following: social, occupational, or school functioning, but the person is generally functioning pretty well and has some meaningful interpersonal relationships (See, American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision pg. 32, 2000). Based on the longitudinal medical record, the evidence suggests that the residual functional capacity adequately accounts for the claimant's limitations due to her impairments.

AR 15-16.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely for the reasons explained in this decision. In terms of the claimant's alleged physical impairments, the undersigned limits the claimant to light work with additional postural restrictions as stated in the residual functional capacity. In terms of the claimant's depression, the undersigned finds the claimant has marked limitations in understanding, remembering, and carrying out detailed and complex instructions as it is defined in the residual functional capacity. The claimant's subjective reported history cannot substitute for the objective medical evidence contained in the record, which provides a more accurate longitudinal history of the claimant's conditions. Turning to the medical evidence, the objective findings in this case fail to provide support for the claimant's allegations of disabling symptoms and limitations. **More specifically, the medical findings do not support the existence of limitations greater than the above listed residual functional capacity.**

AR 16 (emphasis added).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smole*n, 80 F.3d at 1281 (*citing Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (en banc) (*citing Cotton*, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1283-84.

Here, the ALJ found that Plaintiff had the severe impairments of obesity, hypertension, bilateral knee osteoarthritis, diabetes mellitus and depression. AR 12.  He also found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 16.  Therefore, the ALJ could not discredit properly Plaintiff's testimony as to the severity of her symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *See Bunnell*, 947 F.2d at 343, 346-47 (*citing Cotton*, 799 F.2d at 1407). However, that is exactly what the ALJ did here.  *See* AR 14-15.

There is one paragraph between the ALJ's discussion of the lay evidence and the ALJ's finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 14-15.  This paragraph begins with the statement that the "objective medical evidence does not support limitations greater than in the residual functional capacity."  AR 15. That paragraph continues with a selective discussion of the medical evidence.  AR 15.  The ALJ's reliance on the lack of corroboration from the objective evidence alone is not a clear and convincing reason to support the ALJ's adverse credibility finding.  *See Bunnell*, 947 F.2d at 343, 346-47 (*citing Cotton*, 799 F.2d at 1407).

The Commissioner responds that the ALJ's opinion relied on more than the purported lack of objective medical evidence to support the ALJ's credibility determination. Directing the Court to the ALJ's summary of Plaintiff's testimony, the Commissioner argues that the ALJ relied on inconsistencies between Plaintiff's testimony and the medical evidence. For example, the Commissioner notes that Plaintiff reported constant knee pain whether sitting or standing and pain in her hands and right shoulder, but that she ambulated to an examination room without assistance, and was able to sit comfortably on the examination table without difficulty or evidence of pain.  AR 15; (Doc. 20 at 5).

The Commissioner's argument here fails for two reasons.  First, identifying inconsistencies between Plaintiff's testimony and the evidence in the treatment notes is simply another way of stating that the ALJ rejected Plaintiff's subjective symptom testimony because it was inconsistent with the objective medical evidence.  Second, the ALJ did not cite this as a reason for disbelieving Plaintiff.

8

1  While the Commissioner now offers this as a reason to explain the ALJ's adverse credibility finding, the Court cannot entertain these *post hoc* rationalizations. *See, e.g., Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm on a ground upon which he did not rely").

The Commissioner also argues that the ALJ noted that Plaintiff's "other impairments were treated with medication." AR 15. According to the Commissioner, the ALJ was entitled to reject Plaintiff's credibility based on her successful response to medication. (Doc. 20 at 6). *See Gerard v. Astrue*, 406 Fed.Appx. 229, 232 (9th Cir. 2010) (unpublished) (ALJ properly discounted claimant's asserted severity of her anxiety and depression, observing in part that claimant "was responding to psychotherapy and medication"); *Morgan v. Apfel*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ properly discredited the claimant's subjective complaints by citing physician's report that mental symptoms improved with medication). Again, the Commissioner's argument is misguided. It is not enough for the adjudicator to simply recite that Plaintiff takes medication. To reject Plaintiff's credibility based on her treatment, the ALJ must explain whether the medication produced a satisfactory response and control of pain or symptoms. That Plaintiff's "other impairments are all treated with medication" is not a sufficiently specific showing that Plaintiff's impairments were effectively controlled with medication.

Finally, the Commissioner argues that "the ALJ's reference to daily activities is an additional sufficient reason to discount her disabling pain testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (The ALJ may consider many factors in weighing a claimant's credibility, including the claimant's daily activities). However, the ALJ's "reference" to Plaintiff's activities of daily living is simply not a sufficiently specific statement regarding which symptom testimony is not credible based on the performance of Plaintiff's daily activities. Certainly, there are facts included in the record which the ALJ could have utilized in supporting his credibility determination, but the ALJ did not make the necessary connections. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)(where an ALJ failed to analyze the factors set forth in SSR 96-7p the ALJ did not build a logical bridge between the evidence and his conclusion that the claimant's testimony was not credible).

///

Plaintiff carried her burden to demonstrate that the existence of her severe impairments had more than a minimal effect on her ability to function in a work setting, and that those impairments reasonably could have been expected to cause her alleged symptoms, as found by the ALJ. AR 15. Therefore, because there was no evidence of malingering, the ALJ was required to provide clear and convincing evidence for any failure to credit fully her testimony regarding her limitations, and was required to provide more than a conclusion that her limitations were not supported by the objective evidence of record. *See id*.; *see also Smolen*, 80 F.3d at 1283-84; *Lester*, 81 F.3d at 834. This, the ALJ failed to do.

Having carefully reviewed the record, the ALJ here failed to provide clear and convincing reasons for rejecting Plaintiff's credibility. While the ALJ is not obligated to discuss every credibility factor, the ALJ must discuss some clear and convincing credibility findings beyond inconsistency with the objective medical evidence and weigh them against Plaintiff's subjective symptom testimony. If the ALJ then chooses to reject Plaintiff's subjective testimony, the ALJ is required to give an explanation for her rejection. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ required to explain why "significant probative evidence has been rejected"). Therefore, the ALJ's determination that Plaintiff's testimony was not credible without sufficient analysis constitutes error and remand is required. On remand, when reassessing Plaintiff's credibility, the ALJ must provide clear and convincing reasons so that a reviewing court may know the basis for the ALJ's decision and have the ability to assess the propriety of that decision.

**B.  Remand is Required**

This Court has considered Plaintiff's request that this Court award benefits rather than remand the case for additional proceedings but finds remand more appropriate here. The circumstances of the case suggest that further administrative review could remedy the ALJ's errors claimed here, and therefore, remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *see Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003)(remand is an option where the ALJ fails to state sufficient reasons for rejecting a claimant's excess symptom testimony); *see also Garrison v. Colvin*, 2014 U.S. App. LEXIS 13315, 2014 WL 3397218, at *21 (9th Cir. July 14, 2014) (court may "remand for further proceedings, even though all conditions of the credit-as-true rule are satisfied, [when] an evaluation of

the record as a whole creates serious doubt that a claimant is, in fact, disabled"); *Vasquez v. Astrue*, 572 F.3d 586, 600-01 (9th Cir. 2009) (agreeing that a court need not "credit as true" improperly rejected claimant testimony where there are outstanding issues that must be resolved before a proper disability determination can be made); *see generally INS v. Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353, 154 L. Ed. 2d 272 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances).

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's adverse credibility finding warrants remand. Accordingly, the decision is **REVERSED** and the case **REMANDED** to the ALJ for further proceedings. On remand to the Social Security Administration, the ALJ should reconsider Plaintiff's credibility and explain his reasons for determining the extent to which Plaintiff was credible and the effect of this determination on Plaintiff's claim for benefits. The ALJ shall then proceed through steps four and five to determine what work, if any, Plaintiff is or was capable of performing and for what period of time. If deemed necessary, the Commissioner may hold a further hearing and receive additional evidence to address any additional issues.

The Clerk of the Court is **DIRECTED** to enter judgment in favor of Plaintiff Estela Love, and against Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **February 12, 2016**         /s/ Barbara A. McAuliffe
                                       UNITED STATES MAGISTRATE JUDGE